1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                No. 1:18-cv-12217-WGY

4

5      JOSEPH A. CARI,
                  Plaintiff
6

7      vs.

8

9      MEDCAP GROWTH EQUITY, et al,
                  Defendants
10

11                         * * * * * * * * *
12

13                        For Hearing Before:
                       Judge William G. Young
14                 At Suffolk University Law School

15

16                        Motion to Dismiss

17                    United States District Court
                   District of Massachusetts (Boston)
18                    One Courthouse Way
                   Boston, Massachusetts 02210
19                    Tuesday, March 5, 2019

20                         * * * * * * * *
21

22

23              REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
24                  United States District Court
            One Courthouse Way, Room 5510, Boston, MA 02210
25                     bulldog@richromanow.com

```
 1              A P P E A R A N C E S

 2

 3    HAL K. GILLESPIE, ESQ.
         Gillespie, Rozen & Watsky
 4       3402 Oak Grove Avenue, Suite 200
         Dallas, TX 75204
 5       (214) 800-5112
         Email: Hkg@gillespiesanford.com.
 6   and
      PAUL H. MERRY, ESQ.
 7       Law Office of Paul H. Merry
         1 Gateway Center, Suite 308
 8       300 Washington Street
         Newton, MA 02458
 9       (617) 720-2400
         Email: Paul.merry@fairworkplace.net
10       For plaintiff

11

12    ALICIA L. DOWNEY, ESQ.
         Downey Law, LLC
13       155 Federal Street, Suite 300
         Boston, MA 02110
14       (617) 444-9811
         Email: Alicia@downeylawllc.com
15       For defendants

16

17

18

19

20

21

22

23

24

25
```

```
1              P R O C E E D I N G S
2              (Begins, 2:05 p.m.)
3              THE COURT:  Now hearing Civil Matter 18-12217,
4    Cari vs. MedCap.
5              MS. DOWNEY:  Good afternoon, your Honor,
6    Alicia Downey for the defendants.
7              MR. MERRY:  May it please the Court, my name
8    is Paul Merry, I'm representing -- as local counsel
9    representing the plaintiff, Mr. Joseph Cari, in this
10   case, one of the opponents to the motion.
11             MR. GILLESPIE:  Your Honor, may it please the
12   Court, Hal Gillespie from Gillespie, Rozen & Watsky in
13   Dallas, Texas, um, lead counsel for the party opposing
14   the motion.
15             THE COURT:  All right.
16        Let me see if -- the way the briefing has gone,
17   let me see if I've got this right, and this is how I
18   propose to proceed.
19        This is the defendants' motion.  Plaintiffs have
20   moved to amend.  The defendants have promptly opposed
21   that on the ground that the amendment is a futility.
22   I've read all the briefs.  I'm going to work from the
23   proposed amended complaint, and naturally if it fails,
24   um, there's nothing more to be done.
25        I'll hear in support of the motion to dismiss.
```

1          MS. DOWNEY:  Okay.  If I could use the podium?

2          THE COURT:  Of course.

3          MS. DOWNEY:  Thank you.  Good afternoon, your

4    Honor.

5        The, um, what's before you now is a proposed

6    amended complaint that was submitted while a pending

7    motion to dismiss was on file.

8          THE COURT:  Yes, and I'm --

9          MS. DOWNEY:  And I'm just --

10         THE COURT:  -- I'm not troubled by that.

11         MS. DOWNEY:  I know you just said that, I'm

12   just -- the, um -- so I understand that they actually

13   don't oppose dismissal of the complaint.  I did raise,

14   you know, the notion that two of the counts from the

15   original complaint have been abandoned, so I do think

16   the docket should reflect that, at the very least.  But

17   what's proposed in that complaint still has

18   deficiencies, they are fatal deficiencies,

19   notwithstanding what are clear attempts to --

20         THE COURT:  Let's see if we -- what's

21   abandoned here?  Just so we're clear.

22         MS. DOWNEY:  The, um -- from the original

23   complaint there was a fifth cause of action for breach

24   of fiduciary duty against Mr. Velis individually that is

25   gone, um, and there is also the seventh cause of action

1   for an accounting that is also gone --

2          THE COURT:  That's what I understand.

3          MS. DOWNEY:  -- and it should be gone with

4   prejudice for the reasons that I had previously argued.

5   It's not merely a deficiency in pleading, but the

6   failure to state any substantive --

7          THE COURT:  You proceed.

8          MS. DOWNEY:  The problem with the proposed

9   amended complaint -- um, and I'll just start with the

10   low-hanging fruit, it still claims a cause of action

11   under Chapter 93A, the Consumer Protection Act, based on

12   the disputes that are outlined in the proposed amended

13   complaint.  The plaintiff's own opposition and, um,

14   brief in support of its motion to amend the complaint

15   states expressly that the basis of this claim was the

16   fraudulent inducement of Mr. Cari to move him out of his

17   management job with the loss of his salary and into a

18   consulting role.  As I see it, that's a straight-up

19   employer/employee dispute not within Chapter 93A.

20       The other part, the two-part scheme that both

21   pleadings allege was an effort, an unsuccessful effort

22   to persuade Mr. Cari to give up his equity interest in

23   the limited liability company, which is also a defendant

24   in this case, efforts made by the company in which he is

25   part owner and another co-owner of the company.  That is

1   purely an intracorporate dispute again.  And the case

2   law is clear, as a matter of law, that it's outside the

3   scope of 93A.  And so I do think that claim too is ripe

4   for dismissal with prejudice even if you do allow the,

5   um -- and that's why maybe the complaint is --

6           THE COURT:  All right, so let's -- maybe you

7   want to come to the harder ones.

8           MS. DOWNEY:  Yes, the harder ones.  They are

9   hard, and the reason they're hard is because, um, you

10  know I bear a burden as the movant on a motion to

11  dismiss.  We've got essentially contract claims and

12  fraudulent or negligent inducement based on

13  misrepresentation claims.  Let's look at the contract

14  claims first.

15      The original complaint referenced, um, Attachment

16  A, which was a term sheet, the starred show, that

17  attachment was not actually appendaged to the complaint

18  that was filed, but it was served on us, and that

19  attachment was then filed with the Court as Exhibit B to

20  our motion to dismiss with redactions of specific

21  financial information.  That exhibit is signed by only

22  one party, it is signed by Mr. Cari.  And so naturally

23  when I moved to dismiss, I thought of a brilliant

24  argument that, "Hey, it's not signed by both parties."

25  That's the basis of that argument.

1          Now a proposed amended complaint comes in with the

2     new allegations that in fact a term sheet similar to

3     this one was signed by both parties at an earlier date.

4     Nobody has it.  I can tell you in open court, I don't

5     have it, my clients don't have it, their lawyers don't

6     have it.

7          Now --

8               THE COURT:  But it's a motion to dismiss --

9               MS. DOWNEY:  It's a motion to dismiss, so

10     let's credit the allegations.

11               THE COURT:  -- and I take their obligations

12     under Rule 11 very seriously and I know they do.

13               MS. DOWNEY:  Um-hum.

14               THE COURT:  So isn't it adequate pleading?

15     Even if it doesn't exist, um, if it did exist and a jury

16     were to believe it existed and was breached, a recovery

17     could follow.

18               MS. DOWNEY:  Let's assume that was the case,

19     um, it still doesn't create an enforceable contract with

20     respect to the terms that are outlined.  It is -- it

21     would be a signed agreement to negotiate in good faith

22     necessary agreements to conclude, you know, the terms

23     that are in here.  It sets forth, quote, unquote, "the

24     principal terms of what they negotiated as a new

25     arrangement," it sets forth the general terms, that's

1   all they're agreeing to.  And this -- and this is a

2   four-corners-of-the-complaint question of law, an

3   interpretation-of-the-contract argument, that as I read

4   their opposition, and they agree it's just a question of

5   law that can be decided at this stage of the case.

6       They say the unambiguous language reflects that it

7   was a final agreement as to all essential terms.  I have

8   given you cases that suggest that this same type of

9   language that we see in this term sheet and that,

10  crediting the new allegations, was also contained in the

11  earlier term sheet --

12          THE COURT:  But shouldn't -- you say I can

13  deal with this as a matter of law, and of course today

14  it's a matter of law whether we call it "dismissal" or

15  "summary judgment," but I have some problem with --

16  recognizing that I can look at the term sheet because

17  reference is made to it, I'm going to look at that, um,

18  and I have to give all intendments their way.

19      Wouldn't it be better to resolve it, if it can be

20  resolved, as a matter of law on a motion for summary

21  judgment?

22          MS. DOWNEY:  Not if the language is

23  unambiguous.  If the language is unambiguous, it is the

24  language that decides that question, not allegations

25  about subjective beliefs, what are the parties course of

1　dealing, or anything like that.  If you decide the

2　language is ambiguous, then it's a question for summary

3　judgment.

4　　　　　　　　THE COURT:  All right.

5　　　　　　　　MS. DOWNEY:  Now my time is running out.

6　　　　　　On the breach of the implied covenant of good

7　faith and fair dealing, the law there -- and I think

8　both in Massachusetts and Delaware, and I've made the

9　case that it is Delaware law that applies here and not

10　Massachusetts law, but I think it's true under either of

11　the states' law that the breach of the implied covenant

12　has to attach to something in the term sheet, it has to

13　govern the manner of performance of some term in the

14　term sheet.  And here the breach of implied duty claim

15　boils down to simply breach of the term sheet, it's the

16　same thing, it's not breach of implied duty, and that

17　claim can be dismissed for failure to state a claim.

18　　　　　The fraud claims.  Many many problems there

19　including under Rule 9(b).  I still don't know -- and

20　I'm the defendants's lawyer, I'm going to have to answer

21　this complaint, I'm going to have to investigate these

22　claims, but who said exactly what?  With three

23　exceptions.  And I'm quoting the brief.

24　　　　　　　　THE COURT:  You have --

25　　　　　　　　MS. DOWNEY:  There is language in quotes,

1   there was a document that's submitted as being a

2   fraudulent statement, the term sheet itself is

3   characterized as a false promise.  I know what it says.

4   Everything else is described in general terms -- and

5   just described.  I don't know who said what.  I also

6   have no basis in this proposed amended complaint for

7   concluding that the speakers or the writers knew of the

8   falsity of the statements.  That is a requirement.

9           THE COURT:  Well that's a requirement for

10  fraudulent misrepresentation, but on this pleading can I

11  not infer it?  You see I've got a pleading.

12          MS. DOWNEY:  Right, but what specific facts

13  allow you to refer that is missing, it's all alleged in

14  conclusory terms, "They stated falsely," "They lied,"

15  "They tricked Cari," they -- you know that's just a

16  conclusion, that's not enough.

17          On the negligent misrepresentation claim, I think

18  it says "clear-cut as to breach of implied duty,"

19  there's elements that you need to have for that claim

20  under Delaware law, which is a special relationship,

21  special equities, like a fiduciary relationship, or a

22  lawyer/client relationship, it is absent from this

23  complaint.  We have individuals, sophisticated business

24  people represented by counsel.

25          On the Massachusetts formulation, "acting in the

1   course of business," it's an investment firm.  Mr. Velis

2   is the manager of an investment firm.  Mr. Cari is not

3   his customer, he is not an investor, he is not somebody

4   to whom he is selling services.

5                  THE COURT:  Let's give him a --

6                  MS. DOWNEY:  That falls out, um, regardless of

7   what you feel about whether the misrepresentations

8   qualify as representations of fact or not.

9                  THE COURT:  Well let's give them a chance.

10       And let me tee this up and see if you're satisfied

11   with this.

12       I'm going to turn to them now.

13                  MS. DOWNEY:  Oh, okay, I think my 10 minutes

14   is probably up.  Thank you.

15                  THE COURT:  One, I think that was a good

16   presentation, and when you start, I think she's right

17   that Delaware law applies, but there can't be a claim

18   for a violation of Massachusetts General Laws, and I

19   don't see any negligent misrepresentation claim here.

20   But if I let the other three go, and I'm not saying I'm

21   going to, I have some questions about it.

22       But if I let the other three go, breach of

23   contract, breach of the covenant of good faith, and fair

24   dealing under Delaware law, and fraudulent

25   misrepresentation, you're fine with that, aren't you?

1          MR. GILLESPIE:  I'm greedy, your Honor, I

2   would prefer to have more.  I would prefer to --

3          THE COURT:  Well of course you would.  But as

4   a practical matter?

5          MR. GILLESPIE:  Your Honor, Mr. --

6          THE COURT:  Merry.

7          MR. GILLESPIE:  -- Merry, Paul Merry, is going

8   to argue the 93A part and the Delaware law part, and so

9   I'd rather not step on his toes even though I got his

10  name wrong.

11         THE COURT:  So we'll hear from him.

12      And let me ask you this.  If you are going for all

13  of it, how possibly do you think you can support a

14  negligent misrepresentation claim here?

15         MR. GILLESPIE:  Well that's where discovery

16  comes in.  And if you read all of the pleadings, and if

17  we incorporated everything and pulled them all into the

18  negligent misrepresentation piece of this, um, then

19  you're caught with a choice, either these were

20  deliberate lies that Velis was making to Cari --

21         THE COURT:  And I -- I started you out saying,

22  "Well at least to the extent they're adequately pleaded,

23  we'll let that one go forward."

24      How do you get negligent misrepresentation in

25  addition?

1     MR. GILLESPIE:  Your Honor, I think that if

2  they're not deliberate lies, then they're negligent

3  lies, because, um -- and I think that's got to be the

4  fall-back position.

5          THE COURT:  "Negligent lies"?

6          MR. GILLESPIE:  Your Honor, let me --

7          THE COURT:  I'm not familiar with "negligent

8  lies"?

9          MR. GILLESPIE:  Well let me point to the

10  distinction that counsel may not have picked up on.  I

11  just read their brief and they filed it at 6:00 p.m. on

12  Friday, so I've had a chance to look at their brief, but

13  just barely, and one of the things that they missed was

14  a significant distinction between the way this was pled

15  to begin with and the way this has been pled in the

16  amended complaint, and that is that what the lie was

17  about, not that they had a commitment, um, but that

18  Velis represented that he had a commitment.  In fact

19  there may not have been a commitment, the investment

20  didn't get made.  But Velis said, "I have a commitment,"

21  that is a statement of fact.  If in fact there wasn't a

22  commitment, but Velis said there was, then that may be

23  negligent or it may be deliberate.  That's what

24  discovery's going to have to get into.

25      But for *Twombly* purposes and *Iqbal* purposes, we've

1    pled this specifically as any pleading I've ever made,

2    and I've been doing this a long time.  This has got a

3    lot of detail in it and it's not just conclusions.  But

4    there is a place for discovery once you've pled a

5    plausible claim.

6         We -- you're more familiar with *Iqbal* and *Twombly*

7    than most are, but this is a pleading that would get the

8    doors of discovery open.

9         I want to say that --

10             THE COURT:  What do you say to, um -- forgive

11   my interruption, but I need the question answered.

12        What do you say to her argument, which would

13   seemed rather cogent, that you either have a contract

14   claim or you don't, and what is the breach of the

15   implied covenant of good faith or fair dealing?

16        As I understand it, unless I've missed something,

17   in Delaware law that cause of action is, as she properly

18   stated, "in the performance of a contractual duty," it's

19   the same thing, you either win or lose on the contract.

20   What's -- what more should I be looking at for the

21   breach of an implied covenant of good faith and fair

22   dealing?

23             MR. GILLESPIE:  Yeah, great question.  And

24   once you have the term sheet, then you've got -- you're

25   setting up the consulting agreement, and in fact that

1    means a business relationship with it.  At that point

2    there was a transmogrification occurred -- a

3    "transformation," I think that's a better word, Cari

4    used to be a member of this LLC, but then he stopped

5    being a member, he resigned, and he became a consultant.

6    Once he becomes a consultant and his job is to go out

7    and make and get investments and thereby possibly

8    trigger a $2.5 million payoff for himself, then they

9    have an obligation not to get in the way, they have an

10   obligation not to send him a cease-and-desist letter,

11   they have an obligation not to threaten him if he does

12   the job, the work the consultant would do, and there's

13   an implied covenant of good faith and fair dealing that

14   once you made a deal, you don't do things that would

15   kill the deal.

16            THE COURT:  And that's the misconduct that

17   triggers that cause of action?

18            MR. GILLESPIE:  Yes, sir.

19       And can I point something out because I'm almost

20   out of time and I --

21            THE COURT:  No, go right ahead.

22            MR. GILLESPIE:  One thing, and it's important.

23       I have learned, since filing the proposed amended

24   complaint, that Sam Hebert has actually got out of the

25   members category within the LCC in February of 2017.

1    Again we haven't had discovery, but I have learned that

2    we have to amend this complaint one more time at least.

3    Because one of the things they keep talking about is how

4    Mr. Hebert has to have said "Yes" to this term-sheet

5    deal in order to have a proper ratification under the

6    LCC, either or without.  So the only person who had to

7    say "Yes" was Velis who remained the one member of the

8    LCC.  That's important because it knocks out a whole lot

9    of their argument.  It's a question of fact.  We would

10   have pled it better if we had known the --

11          THE COURT:  I agree, it's a question of fact.

12   One last question and then we'll go to Mr. Merry.

13       What about the Rule 9(b), pleading fraud with

14   particularity?  Suppose I allowed the claim for

15   fraudulent misrepresentation, but limited it to the term

16   sheet and the other allegations that are supported with

17   quotes, isn't that appropriate under 9(b) here?

18          MR. GILLESPIE:  Your Honor, I think under

19   9(b), as long as you plead it sufficiently to go

20   forward, then you're entitled to do your discovery.  And

21   one of the things that struck me is when you read her --

22   opposing counsel's brief that was just filed, um, they

23   take -- they basically take our allegations and they

24   restate them leaving out a lot and saying some things

25   that aren't even in the allegations.

 1          THE COURT:  No, but when you say -- you've got

 2   this idea that when you get -- that everything's going

 3   to be in discovery.  Isn't the way 9(b) should work is I

 4   should limit you to what's properly pled, you, um, go

 5   forward on that claim, if discovery gives rise to other

 6   things, then you timely move to amend?

 7          MR. GILLESPIE:  Your Honor, obviously I can

 8   live with that.  That's a priority.

 9          THE COURT:  All right.  Let's hear from

10   Mr. Merry.

11          MR. GILLESPIE:  All right, thank you, your

12   Honor.

13          MR. MERRY:  Good afternoon, your Honor.  I

14   feel a little bit at a disadvantage since the Court has

15   indicated that --

16          THE COURT:  As you well know, you're not

17   really at a disadvantage, and further -- and I say this

18   in a sense to be helpful.  I think this issue of which

19   law applies is complex.  I gave you my tendency, because

20   it is.  I think the easier argument for her is the 93A.

21   Now I've been transparent as I know how.  So you use

22   your 5 minutes wisely.

23          MR. MERRY:  Thank you, your Honor.

24      Just to touch back on the choice of law issue

25   though, the defendants' brief actually acknowledges on

1  Page 7 that choice of law does not affect the

2  determination of this motion.  So I agree it's complex,

3  um, and in our response we outline some bases based

4  primarily on the recent *Hernandez* case from the

5  Massachusetts SJC basically saying that Massachusetts

6  will not always enforce these choice of law agreements

7  that are made in some of these documents, depending on

8  all the circumstances.  And I think, of course

9  completely -- you have complete agreement from me that

10  it's a complex issue, however they did do an analysis

11  there and they came out on the side that would favor our

12  position.

13       To talk briefly about the 93A claim, um, I'm

14  having trouble seeing how it doesn't apply here.

15            THE COURT:  Because there's no trade or

16  commerce and because it's either, as she says, it's

17  employer/employee or it's between the members of the

18  LLC.  It doesn't -- even if the weight of this is

19  physically in Massachusetts, there are limits to 93A.

20            MR. MERRY:  Well that's not what we thought

21  back in the AG's office 100 years ago.  But aside from

22  that, your Honor.

23            THE COURT:  And, yes, Mr. Merry, those were

24  the days.

25            (Laughter.)

1          THE COURT:  But you and I both live with the

2     law as it now stands.

3          MR. MERRY:  Yes, we have to, your Honor, but I

4     don't think it's against us.

5          Specifically Section 11 talks in terms of services

6     -- in fact "services" is the first word that's mentioned

7     when it defines "trade or commerce" in Section 11,

8     "services."  I failed to bring it to the podium, but I

9     have a copy of the statute here, if it will be helpful.

10          Moreover, the assertion that, um, that this is not

11     a business transaction, um, my sister herself said that

12     Mr. Cari was being moved from his position.

13          THE COURT:  The words are not is "is it a

14     business transaction," the words are "in trade or

15     commerce"  This isn't -- this is either employee or

16     employer or it's the structural organization of a

17     business entity, it is not engaged -- I mean I'm talking

18     in conclusory terms, but I think I'm giving your

19     complaint every fair inference.

20          But go ahead.

21          MR. MERRY:  Well I -- I -- my understanding of

22     Section 11 is that it defines -- actually Section 1

23     where the definition appears that defines what is "trade

24     or commerce" and includes services such as consultants.

25          As far as Mr. Cari's role is concerned, it's clear

1   not only that he was being induced to leave his

2   position, which, by the way, he ceases being an employee

3   when that happens, and he is moved into this consultant

4   role, which is, I think, alluded to at least in the term

5   sheet.  But beyond that our allegations include a

6   statement by defendant Velis that he says to Mr. Cari,

7   and I'm only paraphrasing, "You'd better go get your

8   plans made for your -- get your certificate for your

9   LLC, because you're going to be" -- now this is my gloss

10  on that, "that you are going to be a separate business

11  that we're contracting with, so we want to contract with

12  you separately."

13        Therefore -- and, by the way, I don't think 93A

14  requires an arm's-length transaction, I think that the

15  abuses that occur between businesses, regardless of

16  where they came from or what the relationship may have

17  been beforehand, still fall under Section 11, and that's

18  why this -- and moreover, your Honor, this is 12(b)(6),

19  this is the pleading that counts, as the Court has

20  mentioned previously, and the allegations are more than

21  sufficient to make out unfair deceptive practices.

22        I wanted to add just one final thing.  My sister's

23  papers talk about, um, how this 93A claim is only an

24  alternative to our common law claims.  But as I suspect

25  the Court remembers no doubt better than I do, in **Slaney**

1    and **Westwood Auto**, the Massachusetts court, um, it was

2    very explicit that 93A created new substantive rights by

3    making conduct unlawful which was not unlawful under the

4    common law or any prior statute.

5         So by asserting this claim, your Honor, that means

6    that the facts allege, even if they don't rise to the

7    level of satisfying the requirements for the torts that

8    we've alleged, may still rise to being an unfair

9    deceptive practice, because I say it's something that

10   we've -- that has been a broken area of law at least in

11   years somewhat gone by, but we haven't forgotten them.

12   I think I've taken my time, your Honor.  Thank you.

13            THE COURT:  Thank you very much.

14        All right, here's the Court's order.  The motion

15   to dismiss is denied in part and allowed in part.  It's

16   denied as to, um, the count for breach of contract and

17   estoppel.  It's denied as to the breach of the covenant

18   of good faith and fair dealing insofar as there is a

19   claim that they interfered with his performance under

20   the so-called "contract," um, Cari's performance.  It's

21   denied as to fraudulent misrepresentation based upon the

22   term sheet and those particular allegations that are set

23   forth in quotes.  It's allowed as to negligent

24   misrepresentation.  It's allowed as to the violation of

25   General Laws 93A.

1          The Court believes that the choice of law need not

2     be definitively resolved at this stage, but a written

3     order is appropriate, and so I'm going to take that

4     under advisement and address it.  If, in the discipline

5     of writing, I come to revise any of the rulings I've

6     just made, I reserve the right to revise them.

7          Now, with the case going forward, let's see if we

8     can spare you the need for a 16.1 conference and I'll

9     touch on the points of that conference so we don't have

10    to come back.

11         Do you want to try this before a magistrate judge

12    and a jury?  And you've got to both agree and I don't

13    care.

14              (Laughter.)

15              THE COURT:  I mean I really don't care.

16              MS. DOWNEY:  I just have not conferred with

17    the client about those matters, your Honor.

18              THE COURT:  All right, you've got to confer

19    among yourselves within two weeks.  You can let me know.

20         When do you want to try it?  The latest you can

21    try it is in April of 2020.  You'll go on the running

22    trial list.  But I can do it a lot faster than that.

23              MR. GILLESPIE:  Well we can take some

24    discovery, your Honor.  I can tell you my calendar is

25    good in April of 2020.

1          (Laughter.)

2          THE COURT:  Well how about that?

3          MS. DOWNEY:  I have to talk to the client,

4    your Honor, we haven't talked about trial schedule at

5    all.

6          THE COURT:  Well, you know, with all respect

7    you should have.  When you come to court you ought to

8    know something about your case, because I'm trying to

9    save you money here.

10         MS. DOWNEY:  I understand, your Honor.

11         THE COURT:  It's on the running trial list for

12   April, 2020.  Within two weeks time you file a joint

13   proposed case management schedule.

14         Some idiosyncrasies in a case management schedule.

15   One, the latest date for the filing of motions for

16   summary judgment has got to be three months before the

17   trial month.  And, um, I am very strict on experts.

18   Under Rule 702, you file the export reports, you know

19   the rules say that they -- you have to list all the

20   places the expert has been retained, all the cases, and

21   I want docket numbers so the other side can go look them

22   up.  And also you have to do the payment arrangements.

23         But here's the particular concern.  No expert

24   under 702 is going to testify to anything that's not in

25   the expert report.  That's not limited to 20 pages.  And

1   you pass it up when the expert takes the stand.  And

2   it's an evidentiary objection on the part of the other

3   side.  You can say "Object, not in the expert report."

4   I thumb through, if the expert is qualified, I say, "She

5   may testify in accordance with the report."  But she's

6   got to -- she doesn't have to read it, but she's got to

7   stick to the report.

8          All right, that's the order.  And we'll call the

9   next case.

10                  (Ends, 2:30 p.m.)

1                    C E R T I F I C A T E

2

3

4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

5   do hereby certify that the foregoing record is a true

6   and accurate transcription of my stenographic notes

7   before Judge William G. Young, on Tuesday, March 5,

8   2019, to the best of my skill and ability.

9

10

11

12   /s/ Richard H. Romanow 3-20-19
     _____
13   RICHARD H. ROMANOW    Date

14

15

16

17

18

19

20

21

22

23

24

25